IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT MCFARLANE            :
                            :   CIVIL ACTION
        v.                  :
                            :   NO. 01-CV-1657
FRANK D. GILLIS, ET AL.     :

SURRICK, J.                                             DECEMBER 13, 2007

### MEMORANDUM & ORDER

Presently before the Court is the Commonwealth's Motion to Stay DNA Testing Pending *Petition for Writ of Mandamus* and Interlocutory Appeal (Doc. No. 53). The Motion will be granted. We write to provide insight into the Order entered on September 18, 2007 (Doc. No. 50).

## I.  BACKGROUND

### A.  Factual Background

On February 17, 1993, Philadelphia police discovered the body of Sharon Halterman in an abandoned house located at 1815 East Lippincott Street in Philadelphia, Pennsylvania. (Doc. No. 41 at 1.) At Petitioner's trial, the Commonwealth presented little physical evidence linking Petitioner to the crime. (*Id*.) Instead, the Commonwealth predominantly relied on the testimony of Petitioner's accomplice, Edward Sparango, who had agreed to testify against Petitioner in exchange for a plea agreement. (*Id*. at 1-2.) According to Sparango, Petitioner wanted to have sex with a prostitute, later identified as Eileen Parris. Petitioner then intended to kill Parris because she reminded Petitioner of his ex-wife. *Commonwealth v. McFarland*, No. 03293, slip

op. at 1-2 & n.5 (Pa. Super. Ct. Apr. 4, 1997).[1] Petitioner attempted to lure Parris to the Lippincott Street address, however, Parris refused to accompany Petitioner and Sparango. *Id.* at 2. Petitioner and Saparango then saw the victim, Halterman, on the same corner and lured her back to Lippincott Street address with vials of a powder that Petitioner told her was crack cocaine. *Id.*

Upon arriving at the Lippincott Street address, all three went into the second-floor middle bedroom where the victim refused to have sex with Petitioner and Sparango. *Commonwealth v. McFarlane*, Nos. 0984-0987, slip op. at 3 (Pa. Ct. Com. Pl. Phila. May 7, 1996). Sparango testified that the victim's refusal angered Petitioner, who then directed the victim to disrobe and sit at the end of a bed. *McFarland*, No. 03293, slip op. at 2. While the victim was sitting at the end of the bed, Petitioner wrapped a clothesline around the victim's neck and began to strangle her. *Id.* Sparango then left the room and when he returned, the victim was dead. *Id*. Petitioner directed Sparango to help him move the body. *Id.* Sparango and Petitioner carried the body to the basement and stuffed it into a crawl space. *Id.*

The next day, police responded to a report of a burglary at the Lippincott Street address and, upon arriving, encountered the former property owner, Richard Lewis, and Petitioner. *McFarlane*, Nos. 0984-0987, slip op. at 4. Later that day, upon responding to a second call to the property, police discovered the victim's body. *Id.* The police searched the rest of the premises and police discovered several blood stains throughout the house, including in the vestibule, the living room, the stairway, the second-floor bathroom, and the second-floor front bedroom. (Doc. No. 22 at Ex. 2.) In addition, fingernail scrapings were collected from the

---

[1] Petitioner's name was spelled incorrectly on direct appeal.

victim's left and right hands (*id.* at Ex. 5), and blood stains were discovered on the victim's clothing (*id.* at Ex. 6).  Testimony at trial revealed that the blood stains throughout the Lippincott Street address may have resulted from an incident approximately two weeks prior to the night of the murder, at which time Sparango suffered certain injuries.  (Trial Tr. 152, June 10, 1994; Doc. No. 18 at 13.)  The blood evidence collected from Lippincott Street, excluding the blood found on the victim's clothing and the fingernail scrapings, was tested and was found to contain type-B blood.  (Doc. No. 18 at 13.)  Discovery conducted pursuant to an order of this Court revealed that Sparango has type-B blood.  (Doc. No. 42 at Ex. J.)  This fact supports Sparango's assertion that the blood evidence discovered at the Lippincott Street address resulted from his own injuries sustained prior to the night of the murder.  The victim's blood type is type A (Doc. No. 22 at Ex. 1).  The Petitioner's blood type is O (*id.* at Ex. 4).  DNA testing was not conducted on the fingernail scrapings because there was not a sufficient quantity to conduct the appropriate tests at that time.  (*Id.* at Ex. 5; Doc. No. 18 at 14.)

      B.      **Procedural History**

On June 15, 1994, a jury in the Court of Common Pleas, Philadelphia, Pennsylvania returned verdicts of guilty against the Petitioner for first-degree murder, criminal conspiracy, and abuse of corpse.  *McFarlane*, Nos. 0984-0987, slip op. at 1.  The court sentenced Petitioner to life imprisonment on the murder conviction and a consecutive sentence of five to ten years on the conspiracy charge.  *Id.* at 1-2.

On appeal, Petitioner raised the following issues: (1) the verdicts against Petitioner were against the weight of the evidence; (2) the trial court erred in denying Petitioner's motion to suppress physical evidence seized without a search warrant; (3) the trial court erred in permitting

the Commonwealth to elicit hearsay from a witness; (4) the trial court erred in not granting a mistrial after the Commonwealth elicited opinion testimony regarding the individual responsible for the crime; (5) Petitioner was deprived effective assistance of counsel because of counsel's failure to investigate alibi witnesses; (6) trial counsel was ineffective for failing to request an evidentiary hearing regarding the jury members' potential exposure to Petitioner while he was in custody; and (7) trial counsel was ineffective for failing to investigate blood evidence collected from the scene of the murder. *McFarland*, No. 03293, slip op. at 4. On April 4, 1997, the Superior Court affirmed the judgments of sentence. *Commonwealth v. McFarland*, 698 A.2d 668 (Pa. Super. Ct. 1997). On March 4, 1998, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. *Commonwealth v. McFarland*, 723 A.2d 670 (Pa. 1998) (per curiam).

There was no further activity in this matter until April 4, 2001 when Petitioner filed his pro se application seeking federal habeas relief pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On the same day, Petitioner, through counsel filed a Motion For Discovery (Doc. No. 4) and filed a Supplemental Memorandum in Support of Application for Habeas Corpus, asserting: (1) Petitioner is actually innocent of the crime for which he was convicted; (2) Petitioner received ineffective assistance of counsel; (3) the evidence presented at Petitioner's trial was insufficient to sustain the guilty verdict; and (4) no reasonable fact-finder would have found Petitioner guilty in light of new evidence that previously could not have been discovered through the exercise of due diligence. (Doc. No. 2 at 6-12.) The Commonwealth responded that each of Petitioner's claims is time-barred. (Doc. No. 12 at 2.) On June 27, 2001, this matter was assigned to the Honorable M. Faith Angell, Chief Magistrate Judge for the Eastern District of Pennsylvania, for

4

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 7.)

### 1. Petitioner's Request for Discovery

The Motion for Discovery filed by counsel sought testing for blood evidence found on the victim's clothing and under her fingernails.  (Doc. No. 4, Mem. at 3.)  The Commonwealth opposed Petitioner's Motion for Discovery based upon the fact that each of Petitioner's claims was time-barred, that Petitioner could not seek evidence when he did not attempt to develop the factual record in state court, and Petitioner's discovery requests were over-broad and unjustified.  (Doc. No. 12 at 2.)  On November 9, 2001, Magistrate Judge Angell held oral argument on Petitioner's request.  (Doc. No. 14; Doc. No. 15.)  On February 19, 2002, Judge Angell issued a Memorandum and Order permitting Petitioner to discover and test Sparango's blood type, fingernail scrapings from the victim, and blood found on the victim's clothing and explaining the reasons for her decision.  (Doc. No. 18 at 14.)  Judge Angell further ordered the Commonwealth to preserve and produce this evidence for testing within thirty days.  (*Id.*)  Petitioner's request for broad discovery of DNA and blood evidence related to other murders and rapes was denied.  (*Id.* at 15-17.)

### 2. Court's Stay of Proceedings

On March 6, 2002, the Commonwealth filed Objections to Judge Angell's Order.  (Doc. No. 19.)  On April 15, 2002, we stayed Judge Angell's discovery Order pending disposition of the Commonwealth's Objections.  (Doc. No. 24.)  We then held a hearing to determine whether materials existed that would be relevant to Petitioner's requested discovery.  (Doc. No. 25; Doc. No. 30.)  On April 23, 2003, we ordered the production of any and all medical records related to Sparango.  (Doc. No. 34.)  While pursuing the medical records of Sparango, Petitioner's counsel

talked to an individual who had been a nurse in the prison unit at Episcopal Hospital. The individual informed Petitioner's counsel she had heard Sparango confess to committing a murder. (Doc. No. 38, Mem. at 2-3.) On July 14, 2003 upon discovering this new evidence, Petitioner filed a First Amended Petition For Writ of Habeas Corpus. Petitioner also filed a Motion to Stay (Doc. No. 38) so that he could file a Petition For Post Conviction Relief in state court raising this newly discovered evidence. (Doc. No. 38, Mem. at 3-6). The Commonwealth responded that the petition for habeas relief should be dismissed without prejudice because it contained an unexhausted claim. (Doc. No. 39 at 1-3.)

On August 29, 2003, we issued a Memorandum and Order staying this matter to allow Petitioner to exhaust his state court remedies. (Doc. No. 41 at 9.) We recognized that Petitioner had filed a state court application for post-conviction relief based on this newly discovered evidence, that counsel were simply being diligent in their efforts to protect Petitioner's interests, and that discovery was ongoing into whether blood evidence at the scene of the underlying crime would provide the basis for habeas relief. We determined that issuing the stay would protect Petitioner's interests in obtaining this information. (*Id.* at 10-11.)

### 3. Motion to Lift Stay and Resume Discovery

On September 25, 2006, Petitioner filed a Motion To Lift Stay And Resume Discovery (Doc. No. 42.) Petitioner advised that he had fully exhausted his state court remedies, that the Superior Court of Pennsylvania had affirmed trial court's dismissal of his PCRA petition claiming innocence based upon the newly discovered evidence (Sparango's inculpatory statements to the nurse). (Doc. No. 42 at 7.) Petitioner requested that we lift the stay previously imposed (*see* Doc. No. 41) so that Petitioner could perform DNA testing of blood evidence

6

found at the scene of the crime and of blood evidence found in scrapings from the victim's fingernails.  (Doc. No. 42 at 8.)  Finally, Petitioner argued that, contrary to the Commonwealth's assertion, he was not required to comply with Pennsylvania's post-conviction DNA testing procedures because his petition for federal habeas relief had been filed prior to the enactment of the Pennsylvania statute.  (Doc. No. 49 at 3 n.2.)

In response to Petitioner's Motion, the Commonwealth argued that Petitioner's claims for habeas relief were untimely.  (Doc. No. 43 at 3; Doc. No. 48 at 9-11.)  The Commonwealth further argued that the DNA discovery that Petitioner was seeking would not meet the evidentiary standard for actual innocence set forth in *Schlup v. Delo*, 513 U.S. 298 (1995), and that, therefore, further discovery is not warranted.  (Doc. No. 48 at 11.)  Finally, the Commonwealth argued that Petitioner had failed to adhere to Pennsylvania's post-conviction DNA testing statute and was attempting to bypass the Pennsylvania procedures by seeking the same relief through a federal habeas petition.  (*Id.* at 11-13.)

On September 18, 2007, we entered an Order granting Petitioner's Motion To Lift The Stay And Resume Discovery.  (Doc. No. 50).  The Order required the Commonwealth to deliver fingernail scrapings from the victim, as well as blood swabs, to National Medical Services for DNA analysis and blood typing.  The Commonwealth appealed this Order to the Third Circuit Court of Appeals (*see* Doc. No. 51) and filed the instant motion to stay DNA testing pending the outcome of the interlocutory appeal and the petition for writ of mandamus (*see* Doc. No. 53).

On November 28, 2007, the Third Circuit dismissed the interlocutory appeal for lack of jurisdiction and ordered that Petitioner file an answer to the Commonwealth's writ of mandamus.  (*See* Doc. No. 61.)  The Third Circuit also invited this Court to address the mandamus petition,

in particular "the question whether Respondent was required to exhaust the state DNA testing remedy before seeking DNA testing in federal court." *Id*.

## II.  DISCUSSION

Among its challenges to the Order of September 18, 2007, the Commonwealth asserts that we have improperly permitted Petitioner to bypass Pennsylvania's post-trial DNA testing statute. (Doc. No. 53, Ex. 2 at 1 (Writ of Mandamus).) The Commonwealth argues that "McFarlane's request for DNA testing must be brought first in state court, according to the state post-conviction DNA statute." (*Id*. at 15.) The Commonwealth argues that the statute is mandatory, and that a "common-sense application" of the Section 2254(b) exhaustion requirement demands that Petitioner exhaust this available state remedy. (*Id*. at 15-16.)

Petitioner responds that he was not required to pursue DNA testing pursuant to the Pennsylvania statute because discovery under Rule 6(a) of the Rules Governing Section 2254 Cases does not contain an exhaustion requirement. (Doc. No. 54 at 5.) We agree with Petitioner.

Pennsylvania's Postconviction DNA testing statute, 42 Pa. Cons. Stat. Ann. § 9543.1 (Supp. 2006), was enacted on July 12, 2002. Section 9543.1 states:

> An individual convicted on a criminal offense in a court of this Commonwealth and serving a term of imprisonment . . . may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

42 Pa. Cons. Stat. Ann. § 9543.1(a)(1). To be granted DNA testing pursuant to Section 9543.1, an applicant must present a prima facie case demonstrating that the:

> (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

>   (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
>   >   (A) the applicant's actual innocence of the offense for which the applicant was convicted . . . .

*Id.* § 9543.1(c)(3).

Rule 6(a) of the Rules Governing Section 2254 Cases ("Rule 6") deals with discovery in habeas corpus proceedings in the district courts. Rule 6 provides, in part, that "[a] Judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." R. Governing § 2254 Cases 6(a). The Advisory Committee Notes explain that "[g]ranting discovery is left to the discretion of the court, discretion to be exercised where there is a showing of good cause why discovery should be allowed."[2] R. Governing § 2254 Cases 6(a) advisory committee's note (1976).

Since the enactment of Section 9543.1 in 2002, two district courts in this circuit have explored the interplay between Section 9543.1 and Rule 6 in circumstances factually similar to the instant case. In *Abdul-Salaam v. Beard*, Judge Jones, in the Middle District, granted DNA testing to a habeas petitioner, concluding that Rule 6 required only a showing of good cause, not exhaustion. Civ. A. No. 02-2124, 2005 U.S. Dist. LEXIS 45506, at *12-13 (M.D.Pa. Aug. 5, 2005). He reasoned that the exhaustion requirement is limited to the constitutional claims for

---

[2] The Rule 6(a) Advisory Committee Notes also state:

>   This rule contains very little specificity as to what types and methods of discovery should be made available to the parties in a habeas proceeding, or how, once made available, these discovery procedures should be administered. The purpose of this rule is to get some experience in how discovery would work in actual practice by letting district court judges fashion their own rules in the context of individual cases.

R. Governing § 2254 Cases 6(a) advisory committee's note (1976).

relief in the petition, not the discovery in support of those claims. *Id*. Likewise, in *Chambers v. Beard*, Magistrate Judge Mannion, also in the Middle District, reached the same conclusion based upon the plain language of Section 2254(b)(1)(A).[3] Civ. A. No. 06-0980, 2007 U.S. Dist. LEXIS 58091, at *16 (M.D.Pa. Aug. 9, 2007).

The exhaustion requirement in Section 2254 demands that a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999). The Commonwealth appears to argue that Petitioner's DNA testing request is just such a claim requiring exhaustion: "McFarlane has a 'remedy available' in state court – the DNA statute. He has not attempted to raise a claim under it."[4] (Doc. No. 53, Ex. 2 at 16.)

As in *Abdul-Salaam* and *Chambers*, we conclude that applying the exhaustion requirement to all motions filed in a habeas case would be to overextend the plain language of Section 2254(b)(1)(A). A petitioner's discovery motion under Rule 6 is not a claim unto itself requiring exhaustion under Section 2254(b)(1)(A). The discovery motion does not itself seek relief for the petitioner. Rather, it is ancillary to the habeas petition and aimed at garnering

---

[3] Section 2254(b)(1)(A) states that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A) (2006).

[4] However, in its reply brief the Commonwealth states: "Here . . . neither the underlying claims nor the DNA testing request were presented to the state courts. *Nothing* has been properly exhausted." (Doc. No. 56 at 3.) The Commonwealth has argued previously that Petitioner's ineffective assistance of counsel claim was not exhausted in state courts because Petitioner allegedly failed to develop a factual record. (Doc. No. 19 at 5, 8-9.) However, we are satisfied that, as described by Petitioner in response to the Commonwealth's objections to Magistrate Judge Angell's Memorandum and Order of February 19, 2002, Petitioner exhausted his ineffective assistance of counsel claim on direct appeal. (*See* Doc. No. 22 at 5-6.)

evidentiary support for the substantive claims contained in the petition. We, therefore, conclude that Petitioner should be permitted to pursue DNA testing under Rule 6.

In ordering the resumption of discovery, the intention of this Court was to place this habeas case back on the track that it had been set following Magistrate Judge Angell's Order for discovery on February 19, 2002. (Doc. No. 18.) Discovery was halted only because we stayed the matter so that Petitioner could pursue state proceedings regarding what he considered to be newly discovered exculpatory evidence. By lifting the stay and permitting DNA testing, we simply restored the case to the position that it was in before we imposed the stay in on August 29, 2003. (*See* Doc. No. 41.)

The Commonwealth argues that it is doubtful that Petitioner's requested DNA testing will lead to the discovery of evidence that would justify the granting Petitioner's habeas petition. This may or may not be so. Nevertheless, Magistrate Judge Angell found good cause to permit discovery. We agreed and permitted the discovery to go forward so that Petitioner could determine whether, as he claimed, blood evidence at the scene of the murder would serve to provide grounds for habeas relief. (Doc. No. 41 at 10-11.) This interest is no less pressing today than it was then.

Finally, while we share the Commonwealth's concern that Petitioner's exhausted claims may be time-barred, we have previously noted that Petitioner has raised an issue as to whether he received notice that his state appeal had been denied. In light of this notice issue and in consideration of Petitioner's argument that DNA evidence could support his claims for ineffective assistance of counsel and insufficient evidence to support a guilty verdict, we found it prudent to permit continued discovery.

Notwithstanding the foregoing, we will stay the DNA testing that was the subject of our September 18, 2007 Order pending the outcome of the Commonwealth's Petition for a Writ of Mandamus.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT MCFARLANE | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 01-CV-1657 |
| FRANK D. GILLIS, ET AL. | : | |

**ORDER**

AND NOW, this  13th  day of December, 2007, it is ORDERED that the Commonwealth's Motion to Stay DNA Testing Pending *Petition for Writ of Mandamus* and Interlocutory Appeal (Doc. No. 53), is GRANTED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge